# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 16, 2013 Session

## AMY WHEATLEY SPARKMAN v. JASON AARON SPARKMAN

**Direct Appeal from the Chancery Court for Madison County**
**No. 65747    James F. Butler, Chancellor**

---

**No. W2012-00405-COA-R3-CV - Filed June 27, 2013**

---

This appeal involves post-divorce proceedings arising out of numerous disputes between the parties. The only rulings that are challenged on appeal are the trial court's conclusions that: (1) Father was required to pay uncovered medical expenses for the children's counseling, pursuant to the divorce decree; and (2) Father must pay $14,000 of Mother's attorney's fees. For the following reasons, we affirm the trial court's decision on both issues.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Jason Aaron Sparkman

C. Timothy Crocker, Michael A. Carter, J. Noble Grant, III, Ryan L. Hall, Milan, Tennessee, for the appellee, Amy Wheatley Sparkman

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

Amy Wheatley Sparkman ("Mother") and Jason Aaron Sparkman ("Father") were married in 1997.  They had a daughter in 2004 and a son in 2006.  The parties were divorced by decree in January 2009, when the daughter was four years old and the son was two years old.  Mother was named primary residential parent, and Father had parenting time with the children one to two nights per week in addition to every other weekend.

Three months after the final decree of divorce was entered, in April 2009, Mother filed a complaint for emergency suspension of Father's parenting time and for an ex parte order of protection, alleging that Father had sexually abused the parties' daughter and possibly the son as well.  The trial court entered an ex parte order suspending Father's parenting time pending an investigation.  The Department of Children's Services ("DCS") investigated the matter and closed the case as unfounded.  Following a hearing, the trial court dismissed the complaint filed by Mother and dissolved the ex parte order.

Thereafter, Mother filed a petition in general sessions court on behalf of the daughter, seeking an order of protection against Father and again alleging sexual abuse.  An ex parte order of protection was initially entered, and later in the proceedings, Father was permitted to have supervised visitation with the children.  Mother then filed another motion to cease visitation making additional allegations of abuse.  The general sessions court eventually determined that the allegations against Father had not been proven, and it dismissed Mother's petition.  She attempted to appeal the decision to chancery court, but she later dismissed her appeal.

On or about October 26, 2009, Mother initiated the proceedings giving rise to this appeal by filing a petition for contempt against Father.  She claimed that Father had failed to pay various expenses as required by the parenting plan, including $25 for the children's extracurricular activities, $110 for private school expenses, and $50 in prescription costs.  Mother sought an order finding Father in contempt and an award of her attorney's fees.

In January 2010, Father filed an answer denying that he had failed to pay the aforementioned expenses, and he filed a counter-petition for contempt, alleging that Mother had denied him visitation on numerous occasions since the divorce and had made "unsupported, unfounded, and false" allegations of sexual molestation against him. Father further alleged that Mother's pattern of false and malicious accusations against him "demonstrated a severe lack of parental judgment" and constituted a material change in circumstances that justified modifying the parenting plan to name him primary residential

-2-

parent. Father alleged that less than a month before Mother filed the first petition alleging sexual abuse, she had sent him a text message stating, "Unless u give me half income tax, u will not c the kids. Also, get ready 4 ur name 2 be smeared, u r a money hungry snake who doesn't deserve my kids, c u n court." Father's petition recounted the proceedings that subsequently took place in chancery court and in general sessions court and alleged that the "actions of the mother show a complete disregard for the best interest of the children and is paramount [sic] to child abuse," such that he should be named primary residential parent.

During Father's deposition later that year, in September 2010, Father abandoned his request to be named primary residential parent. However, he continued to seek a modification of the parenting plan to the extent that it required him to pay for extracurricular activity expenses, uncovered medical bills, and private school expenses,[1] and he also continued to pursue his counter-petition for contempt against Mother.

Mother filed an amended petition for contempt against Father in March 2011 to update the amounts he owed pursuant to the parenting plan. She alleged that, by that time, Father owed $540 for extracurricular activity expenses, $3,639 for private school expenses, and $99 for prescription costs. Mother again requested that Father be held in contempt and that she be awarded attorney's fees.

In July 2011, Mother filed a petition to modify the parenting plan, seeking to reduce Father's parenting time by eliminating his weeknight visitation, and to increase his child support obligation. Mother also sought an award of attorney's fees.

Following a hearing on all of these matters in November 2011, the trial court entered an order ruling in Mother's favor on almost all of the issues. The trial court found Father in willful civil contempt due to his failure to comply with the parenting plan, in that he had failed to pay $8,218 in private school expenses, $600 in extracurricular activity expenses, $99 in prescription costs, and $3,462 in uncovered medical expenses incurred for counseling for the children. The trial court denied Father's request to modify the parenting plan with regard to his obligation to pay the various expenses, and it noted that Father had withdrawn his request to be named primary residential parent prior to trial. As for Father's counter-petition for contempt against Mother, the trial court found, "There was no proof that [Mother] maliciously or willfully withheld parenting time or that she did not act in good faith based on the information she had before her." Accordingly, the court declined to find Mother in contempt. The trial court granted Mother's petition to modify to eliminate Father's

---

[1] The trial court's letter ruling explained that Father's request for modification of the provisions regarding expenses was not included in his written petition, but at the hearing, the issue was "testified to by Father and defended by Mother."

weeknight visitation. The court found that both parties' incomes had increased, and it recalculated the child support obligation owed by Father and increased it accordingly. The court eliminated Father's obligation to pay Mother's Day Out expenses because the children were in school. Finally, the trial court ordered Father to pay $14,000 of Mother's attorney's fees. Father timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, the issues presented by Father are:

1.      Whether the trial court erred in requiring Father to pay "counseling fees for treatment of alleged sexual abuse that was never proven," and
2.      Whether the trial court erred in ordering Father to pay $14,000 of Mother's attorney's fees "on the basis that Father withdrew his petition for custody."

Mother seeks an award of attorney's fees on appeal. For the following reasons, we affirm the trial court's order with regard to the counseling expenses and the award of attorney's fees. We decline to award attorney's fees to Mother on appeal.

## III. DISCUSSION

### A. Counseling Expenses

Father argues that he should not have been required to pay for counseling for the children because it was necessitated by Mother's "unfounded allegations of sexual abuse." He presents no further argument with regard to this issue.

The permanent parenting plan entered at the conclusion of the divorce proceedings provided, "Uncovered reasonable and necessary medical, dental, orthodontic, and optical expenses, which may include but is not limited to, deductibles or co-payments, eyeglasses, contact lens, prescriptions, routine annual physicals, and *counseling* will be paid by Father." (emphasis added). At the hearing in this matter, Mother testified that DCS recommended that the children obtain counseling during the initial investigation of the allegations of abuse. A representative of DCS similarly testified that counseling was recommended. We presume that it is Father's position that the counseling expenses should not be considered "reasonable and necessary" because the allegations were eventually deemed unfounded. Father notes Mother's text messages and suggests that she fabricated the allegations. However, during the proceedings in which the trial court dissolved the ex parte order of protection and dismissed Mother's complaint containing the allegation of abuse, the trial court specifically found that "[a]lthough accusations have been presented that the allegations are related to a

-4-

failure to share a tax refund, the court does not find this to be the case." During the hearing, the trial judge explained:

> The mother rightfully asked DCS to investigate this. DCS is trained in this area. They deal with issues like this on a daily basis. They conducted their investigation. They followed the protocol. They did a caseworker interview. They did what we also know as – is known as a forensic interview, which was done by a person who is trained to ferret out these things from small children. And you've got to remember that these are small children. And sometimes small children can say things. You don't know where it comes from. But in any event, DCS is trained in this. And they performed their investigation, and they closed the case as an unfounded allegation.
>
> The Court does not believe that the tax refund and the Sexual Abuse allegations are connected. I don't believe the mother did that. I don't believe that the acrimony that exists between the parties is the source of the allegations. I believe that the mother told the truth when she said what she said that the child may have said to her.
>
> At the same time, I'm not convinced that the father is the one that has done anything. I'm not sure that there is a perpetrator. . . .

When specifically considering whether Father should be responsible for the counseling bill that was incurred, the trial court similarly found, in its letter ruling, that "There were allegations made against the Father that were ultimately dismissed. However, Mother did what she is required to do and is not in a position to ignore the child's statements. She followed procedure." Considering the trial court's findings on this issue, and its opportunity to adjudge the parties' credibility throughout these proceedings, we will not disturb the trial court's implicit finding that the counseling expenses were in fact "reasonable and necessary," and therefore, Father was obligated to pay them pursuant to the parenting plan.[2]

### B.    Attorney's Fees

"The decision to award attorney fees and the amount of fees awarded are matters resting within the sound discretion of the trial court." ***Pounders v. Pounders***, No. W2010-01510-COA-R3-CV, 2011 WL 3849493, at *3 (Tenn. Ct. App. Aug. 31, 2011) (citing *Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042, at *9 (Tenn. Ct.

---

[2] We recognize that some of the counseling expenses for the children were due to other issues, such as post-divorce anger, and therapy for an issue involving the son's diet. Father does not mention these subjects on appeal; he only disputes being required to pay for counseling for the alleged sexual abuse. As a result, we will not discuss these expenses further.

App. Apr. 27, 2006)). Our Supreme Court recently summarized our standard of review in this context as follows:

> [A] determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester*, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010); *Keisling v. Keisling*, 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005). The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998), and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); see also *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

**Wright ex rel. Wright v. Wright**, 337 S.W.3d 166, 176 (Tenn. 2011).

Mother requested an award of attorney's fees in her two petitions for contempt and in her petition to modify the parenting plan. After the final hearing in this matter, a late-filed exhibit was submitted containing Mother's attorney's affidavit and itemized billing statement of nearly forty pages, which listed 79.6 hours of billable time, and a total of over $21,000 in fees and expenses incurred by Mother. The trial court's final order stated the following, with regard to attorney's fees:

> Plaintiff[']s request for attorney's fees is granted. Defendant shall pay Plaintiff[']s attorney's fees requested in her Motion for Civil Contempt and same shall be addressed at the end of this Order;
> . . .
> Plaintiff[']s request for an award for attorney's fees is granted in the amount of $14,000.00;
> . . .

The trial court attached to its final order a letter ruling that discussed the basis for the award of attorney's fees in more detail:

> Attorney's fee request: Mother has requested an award of attorney's fees. Attorney's fees are authorized pursuant to Tennessee Code Annotated § 36-5-103 and Tennessee Code Annotated § 29-9-104 as an element of damages in bringing an action to enforce the Court's Order. All of the above matters relate to items which are in the nature of support. Mother has been successful. Therefore, the Court will award Mother an attorney's fee which will be discussed at the end of this letter.
> . . .
> The more difficult issue in this case is the Mother's request for an award of attorney's fees. The Court has granted that request. The Court is aware further that the Father had filed for custody which prompted additional expense on the Mother's part in defending that Motion. Father did not withdraw that Motion until most of the time had already been spent. Mother's attorney has presented a detailed list of the items on which time was spent. The Court has examined same. It is unfortunate that so much time was spent in preparation for all four cases, particularly the Father's request to change custody which presents a major issue for both sides. Although the request was withdrawn shortly before the trial, the work had already been done. Considering the factors set forth in Rule 1.5 of the Tennessee Supreme Court Rules, the Court grants an attorney's fee award to the Mother in the amount of $ 14,000.00.

On appeal, Father challenges the propriety of awarding attorney's fees, on numerous grounds. He claims that an award of Mother's attorney's fees was improper because she "initiated the circumstances that began the process" by making unfounded allegations of abuse. Father denies that the award of attorney's fees was made because of Mother's successful petition for contempt, and he contends that the trial court awarded Mother her attorney's fees solely because he filed a petition to modify the parenting plan and later withdrew it. Father argues that Mother's behavior necessitated that he file the petition to modify and that he only withdrew his petition when Mother finally stopped making false accusations against him. Father claims that awarding Mother her attorney's fees rewards her behavior and, at the same time, punishes him for withdrawing his petition. In response, Mother argues that an award of attorney's fees was proper *either* because she was forced to file a petition for contempt due to Father's nonpayment of numerous expenses *or* because she was attempting to enforce the parenting plan throughout these proceedings, making an award proper pursuant to Tennessee Code Annotated section 36-5-103(c).

The trial court's final order, read in conjunction with its letter ruling, indicates that

the reason for the trial court's award of attorney's fees was because Mother was required to initiate *these* proceedings in order to enforce the court's prior order pertaining to support,[3] in addition to the fact that Mother was required to prepare a defense in response to Father's petition to modify the parenting plan, which he later withdrew. Certainly these are valid grounds for an award of attorney's fees. Tennessee Code Annotated section 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Thus, "[i]n cases involving the custody and support of children, it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) (quotation omitted). There is no absolute right to such fees, but " 'their award in custody and support proceedings is familiar and almost commonplace.'" *Id.* (quoting *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989)).

We reject Father's suggestion that it was improper for the trial court to award attorney's fees to Mother because he filed a petition to modify the designation of primary residential parent and later withdrew it. As we explained in *Pounders*, 2011 WL 3849493, at *4:

> Tennessee Code Annotated section 36-5-103(c) "has been interpreted as allowing for the award of attorney's fees to a party defending an action to change a prior order on the theory that the defending party is enforcing the prior order." *Hansen v. Hansen*, No. M2008-02378-COA-R3-CV, 2009 WL 3230984, at *3 (Tenn. Ct. App. Oct. 7, 2009) (citing *Shofner v. Shofner*, 232

---

[3] This Court has previously described expenses such as uncovered medical expenses as "part and parcel of [a] child support obligation," meaning that a spouse who is forced to return to court to ensure that the children receive such payments can seek to recover his or her attorney's fees pursuant to Tennessee Code Annotated section 36-5-103(c). *Brown v. Brown*, No. W2005-00811-COA-R3-CV, 2006 WL 784788, at *5 (Tenn. Ct. App. Mar. 29, 2006).

S.W.3d 36, 40 (Tenn. Ct. App. 2007); *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *7 (Tenn. Ct. App. Feb. 28, 2007)). Accordingly, "[a] trial court has the authority to award a parent his or her attorney's fees incurred in the defense of a petition to modify custody provisions of a final decree of divorce." *Maynor v. Nelson*, No. M2005-02362-COA-R3-CV, 2006 WL 3421288, at *5 (Tenn. Ct. App. Nov. 27, 2006) (citing Tenn. Code Ann. § 36-5-103(c)). An award of fees is allowed in this situation on the theory that the defending custodial party is enforcing the prior order for the benefit of the children. *Wilson v. Baines*, No. M2009-00249-COA-R3-CV, 2009 WL 4175862, at *6 (Tenn. Ct. App. Nov. 25, 2009).

We held in **Pounders** that an award of attorney's fees was authorized under section 36-5-103(c) when one party voluntarily dismissed his petition for modification prior to the hearing, because the other party had already incurred expenses in preparation of litigating the issues. *Id.* at *5. Likewise, Mother incurred attorney's fees in this matter due to Father's petition to modify the designation of primary residential parent that was pending for approximately eight months before it was withdrawn. The trial court aptly noted that such a request presented "a major issue for both sides." Even after this request was withdrawn, Mother was required to defend against Father's efforts to modify the parenting plan's provisions regarding his payment of extracurricular activity expenses for the children, uncovered medical costs, and private school expenses.

Considering Mother's success in enforcing the trial court's prior order, and defending against Father's efforts to modify it, we find no abuse of the trial court's discretion in deciding to award Mother a portion of her attorney's fees.[4]

---

[4] We note that Father's brief on appeal did not argue that the *amount* of attorney's fees awarded was unreasonable. He simply argued that any award of fees was inappropriate due to Mother's conduct. The only authority cited by Father on appeal was the text of Tennessee Code Annotated section 36-5-103(c). As a result, we will not review the reasonableness of the amount of fees awarded. We note that, during oral argument, counsel for Father did suggest that the trial court should have held an evidentiary hearing regarding the fee award. However, there is no indication that Father requested an evidentiary hearing before the trial court or otherwise challenged the reasonableness of the attorney's fees being sought by Mother, so the trial court was not required to hear proof as to the reasonableness of the fees. *See* **Kline v. Eyrich**, 69 S.W.3d 197, 210 (Tenn. 2002); **Kahn v. Kahn**, 756 S.W.2d 685, 696 (Tenn. 1988); **Malibu Equestrian Estate, Inc. v. Sequatchie Concrete Service, Inc.**, No. M2005-02954-COA-R3-CV, 2007 WL 2200171, at *7-8 (Tenn. Ct. App. July 30, 2007). "Absent a request for a hearing by the party dissatisfied by the award, a trial court is not required to entertain proof as to the reasonableness of the amount of attorney's fees awarded." **Moran v. Willensky**, 339 S.W.3d 651, 664-65 (Tenn. Ct. App. 2010) (citing *Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373, at *15 (Tenn. Ct. App. Feb. 17, 2005)).

Mother has sought an award of attorney's fees on appeal.  Exercising our discretion, we respectfully deny this request.

## IV.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court and remand for further proceedings.  Further, we decline to award attorney's fees on appeal. Costs of this appeal are taxed to the appellant, Jason Aaron Sparkman, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.